UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

JENNIFER CARBONE, M.D.,                                 :     **COMPLAINT**
                                                        :
                          Plaintiff,                    :     Civil Action No.:
                                                        :
              -against-                                 :     **JURY TRIAL DEMANDED**
                                                        :
SUNY DOWNSTATE MEDICAL CENTER,                          :
HENRY SCHAEFFER, M.D., *individually,*                  :
STEPHEN WADOWSKI, M.D., *individually,*                 :
WAYNE J. RILEY, M.D., *individually,*                   :
AND DAVID WLODY, M.D., *individually,*                  :
                                                        :
                          Defendants.                   :
                                                        :
---------------------------------------------------------------- X

        JENNIFER CARBONE, M.D., by her attorneys, Markus & Sheridan, LLP, as and for her

Complaint, alleges upon information and belief as follows:

## PARTIES AND NATURE OF THE CASE

        1.      Plaintiff, Jennifer Carbone, M.D. (Plaintiff or Dr. Carbone) was employed by

SUNY Downstate Medical Center (SUNY Downstate) as a resident in the Pediatric Department.

        2.      Defendant, SUNY Downstate, is a public institution of higher learning located in

Brooklyn, New York and a college of the State University of New York system.   SUNY

Downstate receives substantial federal funding.

        3.      At all relevant times herein, Defendant, Henry Schaeffer, M.D. (Dr. Schaeffer)

was and is the Program Director for the SUNY Downstate Department of Pediatrics.

        4.      At all relevant times herein, Defendant, Stephen Wadowski, M.D. (Dr.

Wadowski) was and is the Chairman for the SUNY Downstate Department of Pediatrics, and

former head of the Graduate Medical Education (GME) Program at SUNY Downstate.

5.      At all relevant times herein, Defendant, Wayne J. Riley, M.D. (Dr. Riley) was and is the President of SUNY Downstate.

6.      At all relevant times herein, Defendant, David Wlody, M.D. (Dr. Wlody) was and is the GME Designated ACGME Institutional Official (DIO) at SUNY Downstate.

7.      At all relevant times herein, Drs. Schaeffer, Wadowski, Riley and Wlody (collectively the "Individual Defendants") were Plaintiff's supervisors and/or exercised supervisory authority over Plaintiff, and had the authority to hire, terminate, and/or affect the terms and conditions of Plaintiff's employment.

8.      This action is action for equitable relief and monetary damages to redress Defendants' unlawful employment discrimination against Dr. Carbone based upon her cognitive disability, gender and/or sex, and to remedy retaliation against her in violation of Title IX of the Education Amendments of 1972 (Title IX) (20 U.S.C. §1681 *et seq*.), the Rehabilitation Act of 1973 (29 U.S.C. §701 *et seq*.), the New York State Human Rights Law (NYSHRL), N.Y. Executive Law Article 15 §§ 290 *et seq*., and the New York City Human Rights Law (NYCHRL), New York City Administrative Code, Chapter 1, Title 8, §8-107 *et seq*.

9.      Specifically, during the course of her employment at SUNY Downstate, Dr. Carbone was discriminated against because of her cognitive disability in the terms and conditions of her employment within the SUNY Downstate medical residency program.  SUNY Downstate also refused to engage in an interactive dialogue to determine the feasibility of her requested reasonable accommodations once Dr. Carbone identified her disability.  Moreover, SUNY Downstate, and its supervisory physicians, including but not limited to the Individual Defendants, supported a work environment permeated with discriminatory intimidation, retaliated against her for complaints of sex and disability discrimination, and ultimately

- 2 -

terminated her residency while allowing similarly-situated male colleagues to remain in the residency program.

## JURISDICTION

10.     Jurisdiction in this Court arises under 28 U.S.C. §1331.   Supplemental jurisdiction is also confirmed on this Court pursuant to 28 U.S.C. §1367.  Plaintiff respectfully requests this Court to exercise jurisdiction over her pendant state and city law claims.

11.     Injunctive and declaratory relief, damages, and other appropriate legal and equitable relief are sought under the pursuant to Title IX, the Rehabilitation Act of 1973, the NYSHRL, and the NYCHRL.

## SATISFACTION OF PRE-SUIT REQUIREMENTS

12.     Plaintiff has complied fully with all prerequisites for jurisdiction in this Court including timely service upon Defendant SUNY Downstate and the State of New York of a Notice of Intention to File Claim.

## VENUE

13.     The unlawful employment practices alleged below were committed within the State of New York, County of Kings and Plaintiff and Defendant SUNY Downstate reside in this judicial district.  Accordingly, venue lies in the United States District Court for the Eastern District of New York under 28 U.S.C. § 1391 (b), (c), and (d).

## STATEMENT OF FACTS

14.     Dr. Carbone volunteered in the Department of Pediatric Hematology-Oncology at SUNY Downstate in the months preceding the start of her residency in 2014.  During that time, Dr. Carbone met with then GME head, Dr. Wadowski to discuss admission into the residency program because she had trouble with her board scores due to a learning disability and

cognitive issues.  Dr. Wadowski had recommended at the time that she consider cognitive testing, but Dr. Carbone was unable to afford the testing due to financial constraints.

15.     During the second month of her residency, Dr. Carbone initiated a complaint to then Program Director, Dr. Schaeffer, and Assistant Program Director Dr. Amy Suss concerning the conduct of an attending, Dr. Asma Ahmad in the Neonatology Department who was aware of her cognitive disability and had lay blame on her for allegedly botching a procedure (although she did not participate in the procedure).  In addition, Dr. Ahmad had made it a point to berate Dr. Carbone in front of her peers, resulting in her peers treating her differently.  Dr. Ahmad even refused to teach her during the remainder of Dr. Carbone's rotation.  Rather than investigating the claim, and in contradiction to GME policy, Dr. Schaeffer mandated she be required to undergo a psychiatric evaluation with SUNY Downstate psychiatrist, Dr. Garrett.

16.     Much to her surprise, when Dr. Carbone went to see Dr. Garrett, he told her that she had been sent to him due to "poor performance".  Dr. Carbone responded that she had been told to meet with him due to the conduct of Dr. Ahmad and her classmates.  Dr. Garrett reviewed her performance evaluations, remarked that they were good, and acknowledged that the required evaluation was punitive in nature.  Following her meeting with Dr. Garrett, Dr. Carbone met with Dr. Schaeffer with a copy of the report from Dr. Garrett.  (Unbeknownst to Dr. Schaeffer, Dr. Garrett had already provided Dr. Carbone with a copy). When they met, Dr. Schaeffer told Dr. Carbone that Dr. Garrett opined she had "psychological issues" and essentially declared her unfit to work.  Dr. Carbone retorted that this was not accurate and advised Dr. Schaeffer that she too had received a copy of the report and it did not make such a conclusion.  Dr. Schaeffer, angered, changed the subject.

17.     During 2015, Dr. Carbone continued to make complaints to Dr. Schaeffer and requested a reasonable accommodation based on her cognitive/learning disability (*i.e.,* additional time to make notes, review labs, and preparing for verbal presentations.) Moreover, she told Dr. Schaeffer that she needed extra test and break time as she had historically been unable to finish a standardized exam as (she did not have enough time to read the questions and fill in the answer choices).  No accommodation was offered, and no interactive process occurred.  Indeed her request for an accommodation was simply ignored by Dr. Schaeffer.

18.     A few months later, and while Dr. Carbone was studying for her Step 3 examination, Dr. Schaeffer removed Dr. Carbone from her morning rotation, and without any warning or dialogue about an alternate rotation, placed her back on rotation with Dr. Suss and another Resident who she had already complained about to him. Dr. Carbone had specifically requested that she not be placed with Dr. Suss.  When Dr. Carbone registered fresh complaint that she needed extra time to prepare for the exam based on her disability, Dr. Schaeffer again ignored the request, remarking that the rotation would not impede her studying.  As expected, the rotation that month was exceptionally unwelcome.  Dr. Suss engaged in pervasive unlawful conduct against Dr. Carbone based on her cognitive disability, including lambasting Dr. Carbone during her presentations and ridiculing her for delays in providing correct answers during rounds. As a result of such conduct, Dr. Carbone was unable to complete the Step 3 examination in October 2016.  At this juncture, Dr. Carbone underwent formal neurocognitive testing which confirmed that she had a neurocognitive learning disability.  Dr. Carbone reported this finding to Dr. Schaeffer who dismissed the findings as irrelevant.

19.     According to the GME Policy on Completion of USMLE or COMLEX Licensing Examinations by residents and fellows, residents are required to pass their Step 3 examinations

by November 1st of the calendar year of their PGY-2 Year (Post Graduate Year – Second Year) to receive appointment to PGY 3 or higher position. For residents already enrolled in the training program, failure to demonstrate passage by November 1st will result in "…a notice of non-renewal of appointment to the training program which may be rescinded by the program if the resident passes the required examinations by the end of the academic year."  Further, pursuant to the GME Grievance Procedures and Due Process policy regarding review and evaluation of resident performance, SUNY Downstate must provide any notice of adverse action to the resident (including non-promotion of a resident) **and** "must . . . inform the resident of his/her right to appeal."  Specifically, it must advise the resident, *inter alia* that they have the right to appeal an academic grievance to the Program Director within 15 days of receipt of notice.

20.     On or about November 19, 2016, Dr. Carbone was advised that SUNY Downstate would not be renewing her contract for PGY-3 year as she had not yet passed the Step 3 examination.  There was no mention of any right to appeal.

21.     In December 2016, Dr. Carbone entered into her 2nd NICU rotation.  Knowing that Dr. Carbone had not yet passed the Step 3 examination and suffers from a cognitive disability, Dr. Gloria Valencia, Director of the Neonatology Program, and a colleague of Dr. Asma Ahmad, aided and abetted in the discriminatory conduct.  By way of example, Dr. Valencia chastised Dr. Carbone for coming in early to review patient charts (given that it takes her longer to read).  During a rotation meeting, Dr. Valencia directly stated to Dr. Carbone that "we need residents who can read".  Additionally, Dr. Carbone was humiliated by Dr. Valencia in front of her peers, interrupted during her presentations (far more than her peers), not permitted to give full assessments and/or plans, and even blamed for notation errors that she never wrote.  Despite complaints to Dr. Schaeffer, this unlawful conduct still continued.

22.     As a result of the hostile environment, Dr. Carbone was required to delay retaking the Step 3 examination and to take an unpaid leave of absence during December 2016 to study for the examination.  (This extended her PGY-2 year through the end of July, 2017.)

23.     Upon her return from leave of absence in January 2017, Dr. Carbone was given her semi-annual evaluation.  At that time, Dr. Carbone raised the issue of the non-renewal.  Dr. Schaeffer did not address her inquiry (nor highlight any appeal process), but instead brushed it off the inquiry with "we will see".  Additionally, Dr. Schaeffer claimed that Dr. Carbone now had performance issues.  When Dr. Carbone asked him to explain the purported issues, Dr. Schaeffer proceeded to pull up her evaluations, reviewed them, but conceded that they were quite good and that she had received positive feedback.  In short, there were none. The disability discrimination towards Dr. Carbone, however, only worsened.

24.     Shortly after her return from leave, Dr. Carbone was again rotated within the Neonatology Department overseen by Dr. Valencia, and the disparate treatment increased.  By way of example, Dr. Carbone's patients were taken away from her and assigned to her intern. Dr. Valencia also continued to berate Dr. Carbone accusing her of misfeasance unjustifiably. When Dr. Carbone complained to GME, she was then disallowed from participating in rounds by Dr. Valencia's subordinate, Dr. Vladimir Bronshtein.  Upon information and belief, other residents made complaints about this treatment on Dr. Carbone's behalf. Further, upon information and belief, Department Chairman, Dr. Wadowski, had been informed of Dr. Carbone's disability and advised her that he would speak with Dr. Valencia about her conduct.

25.     On or about March 30, 2017, Dr. Carbone met with Dr. Wadowski and discussed the two foregoing incidents. Dr. Wadowski inquired if there had been any formal investigations regarding complaints to Dr. Schaeffer.  Dr. Carbone responded that she was not aware of any

reports.  Dr. Wadowski also asked about Dr. Carbone's disability and if any accommodations had been offered.  Dr. Carbone told Dr. Wadowski about Dr. Schaeffer's refusal to provide her with any accommodation, and his *ipse dixit* assertion that her disability was irrelevant.  While Dr. Wadowski and Dr. Carbone also discussed Dr. Valencia's conduct, it was left unresolved.

26.     On or about April 5, 2017, Dr. Carbone emailed Dr. Wadowski about filing an appeal of her contract non-renewal.  In response, Dr. Wadowski advised Dr. Carbone of a ten business-day deadline (this was the first written notification Dr. Carbone had received about any appeal process of an adverse action).  When Dr. Carbone pressed the issue concerning rescission of the appeal, Dr. Wadowski responded the rescission was discretionary and that it had been incumbent upon her to have appealed the non-renewal in November 2016.  In addition, he wrote that it was Dr. Schaeffer's "position" that a resident could only reapply for vacant PGY3-Year position if he/she passed the Step 3 in the academic year (although no such restriction exists in the GME Policy on Completion of USMLE), and such conduct is, upon information and belief, a violation of ACGME due process and accreditation requirements.

27.     On or about April 14, 2017, Dr. Carbone attended a senior morning report after having worked overnight without a break to report in front of approximately thirty people, including Dr. Wadowski.  During her presentation, Dr. Carbone was repeatedly interrupted which, in light of her cognitive disability, caused her to lose her train of thought.  At that juncture, one of the Pediatric Directors, Dr. Desai began to berate her and point at her with such hostility and aggression that he came out of his seat.  Dr. Wadowski, who had been recently apprised of the hostile conduct towards her and knowing about Dr. Carbone's disability, sat mute.  Dr. Carbone was shocked following the incident and subsequently complained to the head of the Office of GME, Dr. Wlody about Dr. Desai's verbal abuse, bullying and humiliation in direct

violation of the SUNY Downstate Workplace Violence Prevention Policy. Additionally, upon information and belief, a number of fellow residents made complaints on her behalf. Dr. Wlody advised that he would speak with Dr. Wadowski about the incident. The conclusion given to Dr. Carbone was that Dr. Desai's conduct was merely a reaction to her lack of adequate knowledge to respond to questions. Dr. Wlody acknowledged, however, that she need not continue to participate in any activity that was abusive.

28.     Nevertheless, Dr. Carbone's complaints and those complaints made on her behalf by classmates continued to fall on deaf ears. Indeed, Dr. Carbone, because of her disability and complaints regarding the disparate treatment towards her, continued to put in situations where she was obstructed from performing her work and/or was unjustifiably deemed to have erred.

29.     By way of example, on April 24, 2017, Dr. Carbone received a poor evaluation for the NICU which she refused to sign because it contained actual falsehoods.

30.     On April 26, 2017, she was called into a meeting and falsely accused of not being available and/or could not be found in the units during her shifts, (although she walked around with a personal cell phone, a floor cell phone and pager, there is a landline phone in the call room, and she could have been paged by a separate page operator).

31.     On May 3, 2017, she again received a poor evaluation from her night float rotation that is clearly inconsistent with her actual performance. Unbelievably, one of the comments was that she "needed to read more".

32.     On May 9, 2017, during her KCHC night rotation, one of Dr. Carbone's interns was sent a text message by an attending to provide negative comments about Dr. Carbone's performance. Fortunately, the intern refused to participate in this concocted paper trail and instead reported the incident to the floor senior.

33.     On May 15, 2017, Dr. Carbone was told by Dr. Amy Suss, that she would be penalized for her slow notetaking, notwithstanding Dr. Suss' refusal to provide Dr. Carbone with her requested reasonable accommodation of extra time to transcribe notes at the beginning of her rotation.

34.     On or about May 11, 2017, Dr. Schaeffer's assistant wrote to Dr. Carbone that she would need to participate in an exit interview/semi-annual evaluation with Dr. Schaeffer. When Dr. Carbone requested clarification from Dr. Schaeffer as to the purpose of the meeting, he confirmed that SUNY Downstate would be terminating her residency on May 24, 2017 and not permit her to continue with the third and final year of her residency in violation of ACGME accreditation and due process requirements.[1]

35.     Dr. Carbone provided SUNY Downstate with an account of the cognitive impairment and her need for a reasonable accommodation in the work environment.  SUNY Downstate was required to comply with ACGME due process and accreditation requirements, and as an employer, engage in an interactive dialogue once Dr. Carbone identified her disability and requested a reasonable accommodation.  Instead, SUNY Downstate acted in violation of ACGME requirements, terminated Dr. Carbone's employment based on her disability under the guise of a non-renewal of a contract, and refused to engage in a good-faith inquiry as to any reasonable accommodation as is required by law. It simply rejected Dr. Carbone's disability as irrelevant, ignored that she passed an examination under its own policy to continue in the residency program, supported and allowed a hostile environment to exist and perpetuate at SUNY Downstate, retaliated against her for complaints of discrimination, and ultimately terminated her residency

---

[1] Following intervention by the undersigned counsel, Dr. Carbone's residency was extended to July 25, 2017 based on her unpaid leave in December 2016, as previously agreed.

while allowing a similarly-situated male colleague to remain in the SUNY Downstate residency program.

## FIRST CAUSE OF ACTION
## FOR DISABILITY DISCRIMINATION UNDER
## THE REHABILITATION ACT OF 1973

### (Not Against Individual Defendants)

36.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "35" hereof as if fully set forth at length herein.

37.     The acts committed by Defendant, SUNY Downstate, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her cognitive disability in violation of the Rehabilitation Act of 1973 (29 U.S.C. §701 *et seq.*).

38.     At all relevant times herein, Dr. Carbone has a disability and/or was regarded as having a disability by Defendant SUNY Downstate and therefore is a member of a protected class.

39.     At all relevant times herein, SUNY Downstate was a program or activity as defined by Section 504 of the Rehabilitation Act of 1973 that received federal financial assistance.

40.     The acts of which Dr. Carbone complains of constitute disability discrimination, took place as a result of Dr. Carbone's cognitive and/or perceived disability, and all took place while Dr. Carbone was a SUNY Downstate Medical Center employee and in the course of her employment at SUNY Downstate.

41.     The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were committed by SUNY Downstate personnel, including but not limited to Drs. Schaeffer, Wadowski, Riley, and Wlody, who possessed and maintained

supervisory authority over Dr. Carbone, and for whose acts, SUNY Downstate is liable.

42.     The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of her employment, including without limitation exclusion from participation in and denial of benefits under the SUNY Downstate residency program, and her ultimate discharge from SUNY Downstate.

43.     As a direct and proximate result of SUNY Downstate's conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of SUNY Downstate's conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

44.     SUNY Downstate's discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of SUNY Downstate's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

45.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under the Rehabilitation Act of 1973, SUNY Downstate is liable to Dr. Carbone for actual damages for loss of wages and benefits and compensatory damages in an amount to be determined at trial.

46.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under the Rehabilitation Act of 1973, SUNY Downstate is further liable to Dr. Carbone for attorney's fees, and other equitable and/or declaratory relief.

47.     Dr. Carbone therefore seeks judgment against SUNY Downstate on this First Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and declaratory and/or equitable relief.

## SECOND CAUSE OF ACTION
## FOR SEX DISCRIMINATION UNDER TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

### (Not Against Individual Defendants)

48.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "47" hereof as if fully set forth at length herein.

49.     The acts committed by Defendant, SUNY Downstate, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her sex in violation of Title IX of the Education Amendments of 1972 (Title IX) (20 U.S.C. §1681 *et seq.*)

50.     Dr. Carbone, a woman, is a member of a protected class.

51.     At all relevant times herein, SUNY Downstate was an education program or activity within the scope of Title IX that received federal financial assistance.

52.     The acts of which Dr. Carbone complains of constitute sex discrimination, took place as a result of Carbone's sex, and all took place while Carbone was a SUNY Downstate resident at SUNY Downstate.

53.     The acts and conduct complained of herein supporting Dr. Carbone's claims for sex discrimination were committed by SUNY Downstate personnel, including but not limited to Drs.   Schaeffer, Wadowski, Riley and Wlody, who possessed and maintained supervisory authority over Carbone, and for whose acts, SUNY Downstate is liable.

54.     The acts and conduct complained of herein supporting Dr. Carbone's claims for sex discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of her residency, including without limitation exclusion from participation in and denial of benefits under the SUNY Downstate residency program, denial of due process rights under the GME Grievance Procedures and Due Process Policy, and her ultimate discharge from SUNY Downstate, while allowing a similarly-situated male colleague to remain in the residency program.

55.     As a direct and proximate result of SUNY Downstate's conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of SUNY Downstate's conduct upon her future employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

56.     SUNY Downstate's discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of SUNY Downstate's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

57.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under Title IX, SUNY Downstate is liable to Dr. Carbone for actual damages for loss of wages and benefits and compensatory damages in an amount to be determined at trial.

58.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under Title IX, SUNY Downstate is further liable to Dr. Carbone for attorney's fees, and other equitable and/or declaratory relief.

59.     Dr. Carbone therefore seeks judgment against SUNY Downstate on this Second Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and declaratory and/or equitable relief.

### THIRD SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE IX OF THE EDUCATION
### AMENDMENTS OF 1972

### (Not Against Individual Defendants)

60.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "59" hereof as if fully set forth at length herein.

61.     SUNY Downstate's acts, which are all deemed a part of this cause of action, constitute unlawful and retaliatory conduct against Dr. Carbone in violation of her rights under the Title IX.

62.     The acts of which Dr. Carbone complains of herein supporting her claims for retaliation took place as a result of and in retaliation for engaging in protected activity, including but not limited to opposing and complaining to supervisory personnel at SUNY Downstate about sex discrimination towards her regarding continuation in the SUNY Downstate residency program, ultimately leading to her discharge.

63.     As a direct and proximate result of SUNY Downstate's retaliatory conduct, Dr. Carbone suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of SUNY Downstate's conduct upon Dr. Carbone's future employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

64.     SUNY Downstate's conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of SUNY Downstate's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

65.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under Title IX, SUNY Downstate is liable to Dr. Carbone for lost wages and benefits, and compensatory damages in an amount to be determined at trial.

66.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under Title IX, SUNY Downstate is further liable to Dr. Carbone for attorney's fees and other equitable relief.

67.     Dr. Carbone therefore seeks judgment against SUNY Downstate on the Third Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs, disbursements, and attorney's fees, and declaratory and/or equitable relief.

## FOURTH CAUSE OF ACTION
## FOR DISABLITY DISCRIMINATION UNDER THE
## NEW YORK EXECUTIVE LAW

### (Not Against Individual Defendants)

68.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "67" hereof as if fully set forth at length herein.

69.     The acts committed by SUNY Downstate, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her cognitive disability in violation of NYSHRL §296(1)(a).

70.     At all relevant times herein, Dr. Carbone had a disability and/or was regarded as

having a disability by Defendant SUNY Downstate and therefore is a member of a protected class.

71.     The acts of which Dr. Carbone complains of herein supporting her claims for disability discrimination took place as a result of her membership in a protected class and all took place while she was a SUNY Downstate employee of and in the course of her SUNY Downstate employment.

72.     The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were committed by SUNY Downstate personnel, including but not limited to Drs.  Schaeffer, Wadowski, Riley, and Wlody, who possessed and maintained direct supervisory authority over Dr. Carbone, and for whose acts SUNY Downstate is liable.

73.     The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of Dr. Carbone's employment, including without limitation her ultimate discharge from SUNY Downstate.

74.     As a direct and proximate result of SUNY Downstate's conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of SUNY Downstate's conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

75.     SUNY Downstate's discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of SUNY Downstate's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and

emotional injuries.

76.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under the NYSHRL, SUNY Downstate is liable to Dr. Carbone for lost income, benefits, and compensatory damages pursuant to NYSHRL §297(4)(c)(iii), in an amount to be determined at trial.

77.     Dr. Carbone therefore seeks judgment against SUNY Downstate on the Fourth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements.

78.     Dr. Carbone also seeks the imposition of the maximum civil fines and penalties against SUNY Downstate pursuant to §297(4)(c)(vi) of the NYSHRL for its willful, wanton, and malicious conduct.

### FIFTH CAUSE OF ACTION
### FOR DISABLITY DISCRIMINATION UNDER THE
### NEW YORK EXECUTIVE LAW

### (Against Individual Defendants)

79.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "78" hereof as if fully set forth at length herein.

80.     The acts committed by the Individual Defendants, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her cognitive disability violation of NYSHRL §296(1)(a) and §296(6).

81.     At all relevant times herein, Dr. Carbone had a disability and/or was regarded as having a disability by the Individual Defendants and therefore is a member of a protected class.

82.     The acts of which Dr. Carbone complains of herein supporting her claims for disability discrimination took place as a result of her membership in a protected class and all

took place while she was a SUNY Downstate employee of and in the course of her SUNY Downstate employment.

83.     The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were committed by the Individual Defendants, who possessed and maintained direct supervisory authority over Dr. Carbone, and had the power to make, and made, personnel decisions affecting Dr. Carbone.

84.     The Individual Defendants personally participated, aided, abetted, incited, compelled, and/or coerced the discriminatory acts and conduct committed against Dr. Carbone as a SUNY Downstate employee.

85.     The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of Dr. Carbone's employment, including without limitation her ultimate discharge from SUNY Downstate.

86.     As a direct and proximate result of the Individual Defendants' conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of the Individual Defendants' conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

87.     The Individual Defendants' discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of the Individual Defendants' violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

88.     As a direct and proximate result of the Individual Defendants' violation of Carbone's rights under the NYSHRL, the Individual Defendants are liable to Dr. Carbone for lost income and benefits, and compensatory damages pursuant to NYSHRL §297(4)(c)(iii), in an amount to be determined at trial.

89.     Dr. Carbone therefore seeks judgment against the Individual Defendants on the Fifth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements.

90.     Dr. Carbone also seeks the imposition of the maximum civil fines and penalties against the Individual Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for their willful, wanton, and malicious conduct.

## SIXTH CAUSE OF ACTION
## FOR SEX DISCRIMINATION UNDER THE
## NEW YORK EXECUTIVE LAW

### (Not Against Individual Defendants)

91.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "90" hereof as if fully set forth at length herein.

92.     The acts committed by SUNY Downstate, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her sex in violation of NYSHRL §296(1)(a).

93.     Dr. Carbone, a woman, is a member of a protected class.

94.     The acts of which Dr. Carbone complains of herein supporting her claims for sex discrimination took place as a result of her membership in a protected class and all took place while she was a SUNY Downstate employee of and in the course of her SUNY Downstate employment.

95.     The acts and conduct complained of herein supporting Dr. Carbone's claims for sex discrimination were committed by SUNY Downstate personnel, including but not limited to Drs. Schaeffer, Wadowski, Riley, and Wlody, who possessed and maintained direct supervisory authority over Dr. Carbone, and for whose acts SUNY Downstate is liable.

96.     The acts and conduct complained of herein supporting Dr. Carbone's claims for sex discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of Dr. Carbone's employment, including without limitation her ultimate discharge from SUNY Downstate.

97.     As a direct and proximate result of SUNY Downstate's conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of SUNY Downstate's conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

98.     SUNY Downstate's discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of SUNY Downstate's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

99.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under the NYSHRL, SUNY Downstate is liable to Dr. Carbone for lost income and benefits, and compensatory damages pursuant to NYSHRL §297(4)(c)(iii) in an amount to be determined at trial.

100.    Dr. Carbone therefore seeks judgment against SUNY Downstate on the Sixth

Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements.

101. Dr. Carbone also seeks the imposition of the maximum civil fines and penalties against SUNY Downstate pursuant to §297(4)(c)(vi) of the NYSHRL for its willful, wanton, and malicious conduct.

**SEVENTH CAUSE OF ACTION
FOR SEX DISCRIMINATION UNDER THE
NEW YORK EXECUTIVE LAW**

**(Against Individual Defendants)**

102. Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "101" hereof as if fully set forth at length herein.

103. The acts committed by the Individual Defendants, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her sex in violation of NYSHRL §296(1)(a) and §296(6).

104. Dr. Carbone, a woman, is a member of a protected class.

105. The acts of which Dr. Carbone complains of herein supporting her claims for sex discrimination took place as a result of her membership in a protected class and all took place while she was a SUNY Downstate employee of and in the course of her SUNY Downstate employment.

106. The acts and conduct complained of herein supporting Dr. Carbone's claims for sex discrimination were committed by the Individual Defendants, who possessed and maintained direct supervisory authority over Dr. Carbone, and had the power to make, and made, personnel decisions affecting Dr. Carbone.

107. The Individual Defendants personally participated, aided, abetted, incited,

compelled, and/or coerced the discriminatory acts and conduct committed against Dr. Carbone as a SUNY Downstate employee.

108.    The acts and conduct complained of herein supporting Dr. Carbone's claims for sex discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of Dr. Carbone's employment, including without limitation her ultimate discharge from SUNY Downstate.

109.    As a direct and proximate result of the Individual Defendants' conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of the Individual Defendants' conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

110.    The Individual Defendants' discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of the Individual Defendants' violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

111.    As a direct and proximate result of the Individual Defendants' violation of Dr. Carbone's rights under the NYSHRL, the Individual Defendants are liable to Dr. Carbone for lost income and benefits, and compensatory damages pursuant to NYSHRL §297(4)(c)(iii) in an amount to be determined at trial.

112.    Dr. Carbone therefore seeks judgment against the Individual Defendants on the Seventh Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements.

113.    Dr. Carbone also seeks the imposition of the maximum civil fines and penalties against the Individual Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for their willful, wanton, and malicious conduct.

## EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE
## NEW YORK EXECUTIVE LAW

### (Not Against Individual Defendants)

114.    Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "113" hereof as if fully set forth at length herein.

115.    The acts committed by SUNY Downstate, which are all deemed a part of this cause of action, constitute unlawful retaliatory conduct against Dr. Carbone in violation of NYSHRL §296(1)(e) and §296(7).

116.    The acts of which Dr. Carbone complains of herein, support her claims for retaliation, and took place as a result of and in retaliation for, including but not limited to, Dr. Carbone opposing SUNY Downstate's discriminatory conduct towards her.

117.    As a direct and proximate result of SUNY Downstate's retaliatory conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income and benefits as well as other losses associated with the effects of conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

118.    SUNY Downstate's retaliatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of SUNY Downstate's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and

emotional injuries.

119.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under NYSHRL, SUNY Downstate is liable to Dr. Carbone for lost income and benefits, and compensatory damages pursuant to NYSHRL §297(4)(c)(iii) in an amount to be determined at trial.

120.     Dr. Carbone therefore seeks judgment against SUNY Downstate on the Eighth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements.

121.     Dr. Carbone also seeks the imposition of the maximum civil fines and penalties against SUNY Downstate pursuant to §297(4)(c)(vi) of the NYSHRL for its willful, wanton, and malicious conduct.

### NINTH CAUSE OF ACTION
### FOR RETALIATION UNDER THE
### NEW YORK EXECUTIVE LAW

### (Against Individual Defendants)

122.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "121" hereof as if fully set forth herein.

123.     The acts committed by the Individual Defendants, which are all deemed a part of this cause of action, constitute unlawful retaliatory conduct against Dr. Carbone in violation of NYSHRL §296(6) and §296(7).

124.     The acts of which Dr. Carbone complains of herein, support her claims for retaliation and took place as a result of and in retaliation for, including but not limited to, Dr. Carbone's opposing the Individual Defendants' discriminatory conduct toward her.

125.     At all relevant times hereto, the Individual Defendants had the power to make,

and made, personnel decisions affecting Dr. Carbone.

126.    The Individual Defendants personally participated, aided, abetted, incited, compelled and/or coerced the retaliatory acts and conduct committed against Dr. Carbone as a SUNY Downstate employee.

127.    As a direct and proximate result of the Individual Defendants' retaliatory conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income benefits as well as other losses associated with the effects of the Individual Defendants' conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

128.    The Individual Defendants' retaliatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of the Individual Defendants' violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

129.    As a direct and proximate result of the Individual Defendants' violation of Dr. Carbone's rights under the NYSHRL,  the Individual Defendants are liable to Dr. Carbone for lost income and benefits, and compensatory damages pursuant to NYSHRL §297(4)(c)(iii) in an amount to be determined at trial.

130.    Dr. Carbone therefore seeks judgment against the Individual Defendants on the Ninth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements.

131.    Dr. Carbone also seeks the imposition of the maximum civil fines and penalties against the Individual Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for their willful,

wanton, and malicious conduct.

## TENTH CAUSE OF ACTION
## FOR DISABILITY DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE

### (Against All Defendants)

132.    Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "131" hereof as if fully set forth herein.

133.    The acts committed by the Defendants, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her cognitive disability in violation of NYCHRL § 8-107 *et seq.*

134.    At all relevant times herein, Dr. Carbone had a disability and/or was regarded as having a disability by Defendants and therefore is a member of a protected class.

135.    The acts of which Dr. Carbone complains of constitute disability discrimination, took place as a result of Dr. Carbone's membership in a protected class, and all took place while she was a SUNY Downstate employee and in the course of her employment at SUNY Downstate.

136.    The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were committed by SUNY Downstate personnel, including but not limited to the Individual Defendants, who possessed and maintained supervisory authority over Dr. Carbone, and for whose acts, SUNY Downstate is liable.

137.    The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of her employment, including without limitation her ultimate discharge from SUNY Downstate.

138.    As a direct and proximate result of the Defendants' conduct, Dr. Carbone has

suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

139.   Defendants' discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

140.   Further, Defendants' discriminatory practices were done with malice and/or reckless indifference to Dr. Carbone's protected rights, such that, in addition to all the measures of relief cited herein to which Dr. Carbone is entitled, Defendants should be required to pay punitive damages pursuant to NYCHRL §8-502(a) as punishment for their vile, indecent, and reprehensible conduct, in order to deter Defendants and others similarly-situated from such conduct in the future.

141.   As a direct and proximate result of Defendants' violation of Dr. Carbone's rights under the NYCHRL, Defendants are liable to Dr. Carbone for actual damages for loss of wages and benefits, and compensatory and punitive damages in an amount to be determined at trial.

142.   As a direct and proximate result of Defendants' violation of Dr. Carbone's rights under the NYCHRL, Defendants are further liable to Dr. Carbone for attorney's fees pursuant to NYCHRL §8-502(g).

143.   Dr. Carbone therefore seeks judgment against all Defendants on the Tenth Cause of Action for actual damages for loss of wages and benefits, compensatory damages and punitive

damages in amount to be determined at trial, plus costs, disbursements, and attorney's fees.

## ELEVENTH CAUSE OF ACTION
## FOR GENDER DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE

### (Against All Defendants)

144.    Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "143" hereof as if fully set forth herein.

145.    The acts committed by the Defendants, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her gender in violation of the NYCHRL § 8-107 *et seq.*

146.    Dr. Carbone, a woman, is a member of a protected class.

147.    The acts of which Dr. Carbone complains constitute gender discrimination, took place as a result of Dr. Carbone's membership in a protected class, and all took place while she was a SUNY Downstate employee and in the course of her employment at SUNY Downstate.

148.    The acts and conduct complained of herein supporting Dr. Carbone's claims for gender discrimination were committed by SUNY Downstate personnel, including but not limited to the Individual Defendants, who possessed and maintained supervisory authority over Dr. Carbone, and for whose acts, SUNY Downstate is liable.

149.    The acts and conduct complained of herein supporting Dr. Carbone's claims for gender discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of her employment, including without limitation her ultimate discharge from SUNY Downstate.

150.    As a direct and proximate result of the Defendants' conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income,

benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

151.    Defendants' discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

152.    Further, Defendants' discriminatory practices were done with malice and/or reckless indifference to Dr. Carbone's protected rights, such that, in addition to all the measures of relief cited herein to which Dr. Carbone is entitled, Defendants should be required to pay punitive damages pursuant to NYCHRL§8-502(a) as punishment for their vile, indecent, and reprehensible conduct, in order to deter Defendants and others similarly-situated from such conduct in the future.

153.    As a direct and proximate result of Defendants' violation of Dr. Carbone's rights under the NYCHRL, Defendants are liable to Dr. Carbone for actual damages for loss of wages and benefits, and compensatory and punitive damages in an amount to be determined at trial.

154.    As a direct and proximate result of Defendants' violation of Dr. Carbone's rights under the NYCHRL, Defendants are further liable to Carbone for attorney's fees pursuant to NYCHRL §8-502(g).

155.    Dr. Carbone therefore seeks judgment against all Defendants on this Eleventh Cause of Action for actual damages for loss of wages and benefits, compensatory damages and punitive damages in amount to be determined at trial, plus costs, disbursements, and attorney's

fees.

## TWELFTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE

**(Against All Defendants)**

156.    Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "155" hereof as if fully set forth herein.

157.    The acts committed by the Defendants, which are all deemed a part of this cause of action, constitute unlawful and retaliatory conduct against Dr. Carbone in violation of her rights under the NYCHRL §8-107(7).

158.    The acts of which Dr. Carbone complains of herein supporting her claim for retaliation took place as a result of and in retaliation for, including but not limited to, Dr. Carbone opposing Defendants' discriminatory conduct towards her.

159.    As a direct and proximate result of Defendants' retaliatory conduct, Dr. Carbone suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

160.    Defendants' conduct so degraded Carbone physically, mentally, and emotionally that, as a proximate result of Defendant's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

161.    Further, the acts committed by Defendants were done with malice and/or reckless indifference to Dr. Carbone's protected rights, such that, in addition to all the measures of relief

complained of herein to which Dr. Carbone is entitled, Defendants should be required to pay punitive damages pursuant to NYCHRL §8-502(a) as punishment for their vile, indecent, and reprehensible conduct, in order to deter Defendants and others similarly situated from such conduct in the future.

162.   As a direct and proximate result of Defendants' violation of Dr. Carbone's rights under the NYCHRL, Defendants are liable to Dr. Carbone for lost wages and benefits, and compensatory and punitive damages an amount to be determined at trial

163.   As a direct and proximate result of Defendants' violation of Dr. Carbone's rights under the NYCHRL, Defendants are further liable to Carbone for attorney's fees pursuant to NYCHRL §8-502(g).

164.   Dr. Carbone therefore seeks judgment against all Defendants on the Twelfth Cause of Action for actual damages for loss of wages and benefits, compensatory and punitive damages in an amount to be determined at trial, plus costs, disbursements, and attorney's fees.

**WHEREFORE**, Dr. Carbone demands judgment against Defendants, individually, jointly, and severally as follows: (i) on the First Cause of Action for actual damages, including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and other equitable and/or declaratory relief; (ii) on the Second Cause of Action for actual damages, including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and other equitable and/or declaratory relief; (iii) on the Third Cause of Action for actual damages, including loss of wages and benefits, compensatory damages, plus costs, disbursements, and other equitable and/or declaratory relief; (iv) on the Fourth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages, plus costs and disbursements; (v) on the Fifth Cause

of Action for actual damages, including loss of wages and benefits, compensatory damages, plus costs and disbursements; (vi) on the Sixth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements; (vii) on the Seventh Cause of Action for actual damages, including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements (viii) on the Eighth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements; (ix) on the Ninth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements (x) on the Tenth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages and punitive damages in an amount to be determined at trial, plus costs, disbursements, and attorney's fees; (xi) on the Eleventh Cause of Action for actual damages, including loss of wages and benefits, compensatory damages and punitive damages in an amount to be determined at trial, plus costs, disbursements, and attorney's fees; (xii) on the Twelfth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages and punitive damages in an amount to be determined at trial, plus costs, disbursements, and attorney's fees; and (xiii) for such other and further relief as this Court deems just and proper.

Dated:   Mount Kisco, New York
         October 25, 2017

MARKUS & SHERIDAN, LLP

By: _____
    Marc O. Sheridan
    *Attorneys for Plaintiff*
    116 Radio Circle, Suite 304
    Mount Kisco, New York 10549
    (914) 241-6300