UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

JENNIFER CARBONE, M.D.,                                    :      **AMENDED COMPLAINT**
                                                           :
                                  Plaintiff,               :      Civil Action No.:
                                                           :
            -against-                                      :      1:17-cv-06275(JBW)(PK)
                                                           :
SUNY DOWNSTATE MEDICAL CENTER,                             :      **JURY TRIAL DEMANDED**
HENRY SCHAEFFER, M.D., *individually,*                     :
STEPHEN WADOWSKI, M.D., *individually,*                    :
WAYNE J. RILEY, M.D., *individually,*                      :
AND DAVID WLODY, M.D., *individually,*                     :
                                                           :
                                  Defendants.              :
                                                           :
------------------------------------------------------------------- X

        JENNIFER CARBONE, M.D., by her attorneys, Markus & Sheridan, LLP, as and for her

Amended Complaint, alleges upon information and belief as follows:

                        **PARTIES AND NATURE OF THE CASE**

        1.      Plaintiff, Jennifer Carbone, M.D. (Plaintiff or Dr. Carbone) was employed by

SUNY Downstate Medical Center (SUNY Downstate) as a resident in the Pediatric Department.

        2.      Defendant, SUNY Downstate, is a public institution of higher learning located in

Brooklyn, New York and a college of the State University of New York system.  SUNY Downstate

receives substantial federal funding.

        3.      At all relevant times herein, Defendant, Henry Schaeffer, M.D. (Dr. Schaeffer)

was and is the Program Director for the SUNY Downstate Department of Pediatrics.

        4.      At all relevant times herein, Defendant, Stephen Wadowski, M.D. (Dr.

Wadowski) was and is the Chairman for the SUNY Downstate Department of Pediatrics, and

former head of the Graduate Medical Education (GME) Program at SUNY Downstate.

5.      At all relevant times herein, Defendant, Wayne J. Riley, M.D. (Dr. Riley) was and is the President of SUNY Downstate.

6.      At all relevant times herein, Defendant, David Wlody, M.D. (Dr. Wlody) was and is the GME Designated ACGME Institutional Official (DIO) at SUNY Downstate.

7.      At all relevant times herein, Drs. Schaeffer, Wadowski, Riley and Wlody (collectively the "Individual Defendants") were Plaintiff's supervisors and/or exercised supervisory authority over Plaintiff, and had the authority to hire, terminate, and/or affect the terms and conditions of Plaintiff's employment.

8.      This is an action for equitable relief and monetary damages to redress Defendants' unlawful employment discrimination against Dr. Carbone based upon her cognitive disability, gender and/or sex, and to remedy retaliation against her in violation of Title IX of the Education Amendments of 1972 (Title IX) (20 U.S.C. §1681 *et seq.*), the Rehabilitation Act of 1973 (29 U.S.C. §701 *et seq.*), the New York State Human Rights Law (NYSHRL), N.Y. Executive Law Article 15 §§ 290 *et seq.*, and the New York City Human Rights Law (NYCHRL), New York City Administrative Code, Chapter 1, Title 8, §8-107 *et seq.*

9.      Specifically, during the course of her employment at SUNY Downstate, Dr. Carbone was discriminated against because of her cognitive disability in the terms and conditions of her employment within the SUNY Downstate medical residency program.  SUNY Downstate also refused to engage in an interactive dialogue to determine the feasibility of her requested reasonable accommodations once Dr. Carbone identified her disability.  Moreover, SUNY Downstate, and its supervisory physicians, including but not limited to the Individual Defendants, failed to follow its own due process policies concerning Dr. Carbone's continuation in the residency program, supported a work environment permeated with discriminatory intimidation,

- 2 -

retaliated against her for complaints of sex and disability discrimination, and ultimately terminated her residency while allowing similarly-situated male and/or non-disabled colleagues to remain in the residency program.

## JURISDICTION

10.     Jurisdiction in this Court arises under 28 U.S.C. §1331.   Supplemental jurisdiction is also confirmed on this Court pursuant to 28 U.S.C. §1367.  Plaintiff respectfully requests this Court to exercise jurisdiction over her pendant state and city law claims.

11.     Injunctive and declaratory relief, damages, and other appropriate legal and equitable relief, including but not limited to Dr. Carbone's return to her PGY-3 in the SUNY Downstate pediatric residency program, are sought pursuant to Title IX, the Rehabilitation Act of 1973, the NYSHRL, and the NYCHRL.

## SATISFACTION OF PRE-SUIT REQUIREMENTS

12.     Plaintiff has complied fully with all prerequisites for jurisdiction in this Court including timely service upon Defendant SUNY Downstate and the State of New York of a Notice of Intention to File Claim.

13.     Plaintiff is filing a Charge of Discrimination with the Equal Employment Opportunity Commission in connection with this matter for sex and/or disability discrimination and to remedy unlawful retaliation against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") as amended 42 U.S.C. §§ 2000e, et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended by the ADA Amendments Act of 2008, Pub. L. 110-305 (collectively the "ADA").  Once a Notice of Right to Sue has been received, Plaintiff will seek to file an amended complaint adding these additional claims.

## VENUE

14.      The unlawful employment practices alleged below were committed within the State of New York, County of Kings and Plaintiff and Defendant SUNY Downstate reside in this judicial district.  Accordingly, venue lies in the United States District Court for the Eastern District of New York under 28 U.S.C. § 1391 (b), (c), and (d).

## STATEMENT OF FACTS

15.      Dr. Carbone, a woman, is a member of a protected class.

16.      At all relevant times herein, Dr. Carbone has a cognitive disability and/or was regarded as having a disability by Defendant SUNY Downstate and therefore is a member of a protected class. Specifically, Dr. Carbone suffers from Deficient Hyperactivity Disorder Inattentive Presentation (ADHD), Unspecified Neurocognitive and Anxiety Disorders, and Specific Learning Disorder with Impairment in Reading. This cognitive disability substantially limits her major life activities, including but not limited to reading, concentrating, thinking, communicating, and working.

17.      At all relevant times herein, Dr. Carbone was qualified to perform and willing to perform all the functions of her residency despite the existence of her cognitive disability.

18.      Dr. Carbone volunteered in the Department of Pediatric Hematology-Oncology at SUNY Downstate in the months preceding the start of her residency in 2014.  During that time, Dr. Carbone met with the Office of Graduate Medical Education (GME) head, Dr. Wadowski to discuss admission into the residency program because she had trouble with her board scores due to a learning disability and cognitive issues.  Dr. Wadowski had recommended at the time that she consider cognitive testing, but Dr. Carbone was unable to afford the testing due to financial constraints.

19.     During the second month of her residency, Dr. Carbone initiated a complaint to then Program Director, Dr. Henry Schaeffer, and Assistant Program Director Dr. Amy Suss concerning the conduct of an attending, Dr. Asma Ahmad in the Neonatology Department who was aware of her cognitive disability and had lay blame on her for allegedly botching a procedure (although she did not participate in the procedure).  In addition, Dr. Ahmad had made it a point to berate Dr. Carbone in front of her peers, resulting in her peers treating her differently.  Dr. Ahmad even refused to teach her during the remainder of Dr. Carbone's rotation.  Rather than investigating the claim, and in contradiction to GME policy, Dr. Schaeffer mandated she be required to undergo a psychiatric evaluation with SUNY Downstate psychiatrist, Dr. Garrett.

20.     Much to her surprise, when Dr. Carbone went to see Dr. Garrett, he told her that she had been sent to him due to "poor performance".  Dr. Carbone responded that she had been told to meet with him due to the conduct of Dr. Ahmad and her classmates.  Dr. Garrett reviewed her performance evaluations, remarked that they were good, and acknowledged that the required psychiatric evaluation was punitive in nature.  Following her meeting with Dr. Garrett, Dr. Carbone met with Dr. Schaeffer with a copy of the report from Dr. Garrett.  (Unbeknownst to Dr. Schaeffer, Dr. Garrett had already provided Dr. Carbone with a copy). When they met, Dr. Schaeffer told Dr. Carbone that Dr. Garrett opined she had "psychological issues" and essentially declared her unfit to work.  Dr. Carbone retorted that this was not accurate and advised Dr. Schaeffer that she too had received a copy of the report and it did not make such a conclusion.  Dr. Schaeffer, angered, changed the subject.

21.     During 2015, Dr. Carbone continued to make complaints to Dr. Schaeffer and requested a reasonable accommodation based on her documented cognitive/learning disability (*i.e.,* additional time to make notes, review labs, and preparing for verbal presentations.)

Moreover, she told Dr. Schaeffer that she needed extra test and break time as she had historically been unable to finish a standardized exam as (she did not have enough time to read the questions and fill in the answer choices).  No accommodation was offered, and no interactive process occurred.  Indeed her request for an accommodation was simply ignored by Dr. Schaeffer.

22.     A few months later, and while Dr. Carbone was studying for her Step 3 examination (*i.e.*, the final examination in the United States Medical Licensing Examination (USMLE) sequence leading to license to practice medicine without supervision)[1], Dr. Schaeffer removed Dr. Carbone from her morning rotation, and without any warning or dialogue about an alternate rotation, placed her back on rotation with Dr. Suss and another resident who she had already complained about to him. Dr. Carbone had specifically requested that she not be placed with Dr. Suss.  When Dr. Carbone registered fresh complaint that she needed extra time to prepare for the exam based on her disability, Dr. Schaeffer again ignored the request, remarking that the rotation would not impede her studying.

23.     As expected, the rotation that month was exceptionally unwelcome.  Dr. Suss engaged in pervasive unlawful conduct against Dr. Carbone based on her cognitive disability, including lambasting Dr. Carbone during her presentations and ridiculing her for delays in providing correct answers during rounds.  As a result of such conduct, Dr. Carbone was unable to complete the Step 3 examination in October 2016.

24.     At this juncture, Dr. Carbone underwent formal neurocognitive testing which confirmed that she had a neurocognitive learning disability.  Dr. Carbone reported these findings to Dr. Schaeffer by showing him the report from her treating physician, and reiterated her request

---

[1] Step 3 provides a final assessment of physicians assuming independent responsibility for delivering general medical care. *See,* http://www.usmle.org/step-3.

for an accommodation in the workplace (*i.e.,* additional time to make notes, review labs, and preparing for verbal presentations), but he dismissed the findings as irrelevant.

25.     According to the SUNY Downstate GME Policy on Completion of USMLE or COMLEX Licensing Examinations by residents and fellows, residents are required to pass their Step 3 examinations by November 1st of the calendar year of their PGY-2 Year (Post Graduate Year – Second Year) to receive appointment to PGY 3 or higher position. For residents already enrolled in the training program, failure to demonstrate passage by November 1st will result in:

> "…**a notice of non-renewal of appointment to the training program which may be rescinded by the program if the resident passes the required examinations by the end of the academic year**.  **Individual residents who have received a statement of non-renewal are entitled to due process, which includes criteria established by each training programs for remediation and withdrawal of the notification of non-renewal…Exceptions to this policy required written request for waiver from the Program Director and approval by the GME Committee or DIO which shall not be unreasonably withheld.**"

[Emphasis added.] See, Exhibit "1".

26.     Further, pursuant to the GME Grievance Procedures and Due Process policy regarding review and evaluation of resident performance, any notice of adverse action to the resident (including non-promotion of a resident) "must be in writing, must generally state the reasons for the action, and must be reviewed with the resident, who must sign and date the notice indicating its content has been reviewed with him/her. It must also inform the resident of his/her right to appeal…." Specifically, the notice it must advise the resident, *inter alia* that they have the right to appeal an academic grievance to the Program Director within 15 days of receipt of notice. *See*, Exhibit "2".

27.     On or about November 19, 2016, Dr. Carbone met with Dr. Schaeffer concerning her Step 3 score. Dr. Schaeffer advised her orally that SUNY Downstate would not be renewing her contract for PGY-3 year as she had not yet passed the Step 3 examination. Dr. Carbone asked Dr. Schaeffer if she re-took the Step 3 examination and passed before the end of the academic year, would she be allowed to continue in the residency program.  Dr. Schaeffer simply responded with "we will see." There was no written statement of non-renewal, notice of any adverse action against Dr. Carbone, or even any mention by Dr. Schaeffer of any right to appeal the contract non-renewal. In other words, Dr. Schaeffer intentionally ignored the due process policy for Dr. Carbone.

28.     In December 2016, Dr. Carbone entered into her 2nd NICU rotation.  Knowing that Dr. Carbone had not yet passed the Step 3 examination and suffers from a cognitive disability, Dr. Gloria Valencia, Director of the Neonatology Program, and a colleague of Dr. Asma Ahmad, aided and abetted in the discriminatory conduct.  By way of example, Dr. Valencia chastised Dr. Carbone for coming in early to review patient charts (given that it takes her longer to read).  During a rotation meeting, Dr. Valencia directly stated to Dr. Carbone that "we need residents who can read".  Additionally, Dr. Carbone was humiliated by Dr. Valencia in front of her peers, interrupted during her presentations (far more than her peers), not permitted to give full assessments and/or plans, and even blamed for notation errors that she never wrote.  Despite complaints to Dr. Schaeffer, including but not limited to being permitted additional time to review patient charts and additional time to transcribe notes, this unlawful conduct still continued.

29.     As a result of the hostile environment and the failure of SUNY Downstate to accommodate Dr. Carbone's disability, Dr. Carbone was required to delay retaking the Step 3

examination and to take an unpaid leave of absence during December 2016 to study for the examination.  (This extended her PGY-2 year through the end of July, 2017.)

30.      Dr. Carbone re-took the Step 3 examination in January 2017, and obtained an accommodation from NBME based on her cognitive disability (*i.e*., additional break time).

31.      Upon her return from leave of absence in January 2017, Dr. Carbone was given her semi-annual evaluation.  At that time, Dr. Carbone raised the issue of the non-renewal again as she had re-taken the Step 3 examination.  Dr. Schaeffer did not address her inquiry (nor highlight any appeal process), but instead again brushed off the inquiry with "we will see".  Additionally, in retaliation for complaining about disparate treatment based on her disability, Dr. Schaeffer claimed that Dr. Carbone now had performance issues.  When Dr. Carbone asked him to explain the purported issues, Dr. Schaeffer proceeded to pull up her evaluations, reviewed them, but conceded that they were quite good and that she had received positive feedback.  In short, there were none. The disability discrimination towards Dr. Carbone, however, only worsened.

32.      Shortly after her return from leave, Dr. Carbone was again rotated within the Neonatology Department overseen by Dr. Valencia, and the disparate treatment increased.  By way of example, Dr. Carbone's patients were taken away from her and assigned to her intern.  Dr. Valencia also continued to berate Dr. Carbone accusing her of misfeasance unjustifiably.  When Dr. Carbone complained to GME, she was then disallowed from participating in rounds by Dr. Valencia's subordinate, Dr. Vladimir Bronshtein.  Upon information and belief, other residents made complaints about this treatment on Dr. Carbone's behalf. Further, upon information and belief, now Pediatric Department Chairman and prior Senior Associate Dean for the GME, Dr. Wadowski, had been informed of Dr. Carbone's disability and advised her that he would speak with Dr. Valencia about her conduct.

33.     On or about March 30, 2017, Dr. Carbone met with Dr. Wadowski and discussed the two foregoing incidents. Dr. Wadowski inquired if there had been any formal investigations regarding complaints to Dr. Schaeffer.  Dr. Carbone responded that she was not aware of any reports.  Dr. Wadowski also asked about Dr. Carbone's disability and if any accommodations had been offered.  Dr. Carbone told Dr. Wadowski about Dr. Schaeffer's refusal to provide her with any accommodation, and his *ipse dixit* assertion that her disability was irrelevant.  While Dr. Wadowski and Dr. Carbone also discussed Dr. Valencia's conduct, it was left unresolved.

34.     Shortly before receiving her Step 3 score, Dr. Carbone emailed Dr. Wadowski about how to get a rescission of the non-renewal if she passed the examination before the end of the academic year, as she had no clear answer from Dr. Schaeffer.  In response, Dr. Wadowski, who, upon information and belief, was intimately familiar with the SUNY Downstate due process policy, advised Dr. Carbone of a ten business-day deadline (this was the **first** written notification Dr. Carbone had received about any appeal process of an adverse action).  When Dr. Carbone pressed the issue concerning rescission of the non-renewal, Dr. Wadowski responded the rescission was discretionary, that she had not received a *conditional* non-renewal (although there is no definition anywhere in the GME policies) and that it had been incumbent upon her to have appealed the non-renewal in November 2016. Effectively, he said it was too late.  Notwithstanding, Dr. Wadowski noted that residents who have received notice of non-renewal are "entitled to due process" and told her that any request for appeal would go to Dr. Schaeffer, and that she needed to discuss the matter with Dr. Schaeffer. *See*, copy of e-mail at Exhibit "3".

35.     In addition, Dr. Wadowski wrote that it was Dr. Schaeffer's "position" that a resident could <u>only</u> reapply for vacant PGY3-Year position at the time he/she passed the Step 3 examination in the academic year (although no such restriction exists in the GME Policy on

Completion of USMLE), and such conduct is, upon information and belief, a violation of ACGME due process and accreditation requirements. Although, Dr. Carbone passed the Step 3 examination before the end of the academic year, she was not permitted to reapply for any PGY3-Year position.

36.     On or about April 14, 2017, Dr. Carbone attended a senior morning report after having worked overnight without a break to report in front of approximately thirty people, including Dr. Wadowski.  During her presentation, Dr. Carbone was repeatedly interrupted which, in light of her cognitive disability, caused her to lose her train of thought.  At that juncture, one of the Pediatric Directors, Dr. Desai began to berate her and point at her with such hostility and aggression that he came out of his seat.  Dr. Wadowski, who had been recently apprised of the hostile conduct towards her based upon Dr. Carbone's cognitive disability and complaints about disparate treatment, sat mute.  Dr. Carbone was shocked following the incident and subsequently complained to the head of the Office of GME, Dr. Wlody about Dr. Desai's verbal abuse, bullying and humiliation in direct violation of the SUNY Downstate Workplace Violence Prevention Policy.  Additionally, upon information and belief, a number of fellow residents made complaints on her behalf.  Dr. Wlody advised that he would speak with Dr. Wadowski about the incident.  The conclusion given to Dr. Carbone was that Dr. Desai's conduct was merely a reaction to her lack of adequate knowledge to respond to questions. Dr. Wlody acknowledged, however, that she need not continue to participate in any activity that was abusive.  Dr. Wlody did nothing to stop the disparate treatment towards Dr. Carbone.

37.     Dr. Carbone's complaints and those complaints made on her behalf by classmates continued to fall on deaf ears.  Indeed, Dr. Carbone, because of her disability and complaints regarding the disparate treatment towards her, continued to be put in situations where she was obstructed from performing her work and/or was unjustifiably deemed to have erred.

38.     By way of example, on April 24, 2017, in retaliation for her complaints of disparate treatment based on her disability, Dr. Carbone received a poor evaluation for the NICU which she refused to sign because it contained actual falsehoods.

39.     On April 26, 2017, she was called into a meeting and falsely accused of not being available and/or could not be found in the units during her shifts, (although she walked around with a personal cell phone, a floor cell phone and pager, there is a landline phone in the call room, and she could have been paged by a separate page operator).  *See*, e-mail at Exhibit "4".

40.     On May 3, 2017, she again received a poor evaluation from her night float rotation that is clearly inconsistent with her actual performance.  Unbelievably, one of the comments was that she "needed to read more".

41.     On or about May 3, 2017, Dr. Carbone received notice that she had passed the Step 3 examination.

42.     On May 9, 2017, during her KCHC night rotation, one of Dr. Carbone's interns was sent a text message by an attending to provide negative comments about Dr. Carbone's performance.  Fortunately, the intern refused to participate in this concocted paper trail and instead reported the incident to the floor senior.

43.     On May 15, 2017, Dr. Carbone was told by Dr. Amy Suss, that she would be penalized for her slow notetaking, notwithstanding Dr. Suss' refusal to provide Dr. Carbone with her requested reasonable accommodation of extra time to transcribe notes at the beginning of her rotation.

44.     On or about May 11, 2017, Dr. Schaeffer's assistant wrote to Dr. Carbone that she would need to participate in an exit interview/semi-annual evaluation with Dr. Schaeffer. When Dr. Carbone requested clarification from Dr. Schaeffer as to the purpose of the meeting, he

confirmed that SUNY Downstate would be terminating her residency on May 24, 2017 and not permit her to continue with the third and final year of her residency in violation of ACGME accreditation and due process requirements.[2]

45.     On May 23, 2017, Dr. Carbone wrote Dr. Schaeffer highlighting that: (a) no accommodation had been provided by SUNY Downstate concerning her cognitive disability; and (b) although she had passed the Step 3 examination during the academic year to qualify for a rescission of the non-renewal of her contract under the GME Policy on Completion of USMLE or COMPLEX Licensing Examinations by residents, her similarly-situated male colleague Akbar Khan, who had previously failed the Step 3 examination and then passed his Step 3 examination before the end of the academic year (like Dr. Carbone), was permitted to apply for any vacancy and/or remain in the program while she was not.  *See*, email at Exhibit "5".

46.     On May 26, 2017, Dr. Carbone, through counsel, wrote to Wayne J. Riley M.D., demanding her continuation in the SUNY Downstate residency program, and reiterating her claims raised by Dr. Carbone concerning unlawful and disparate treatment based on her cognitive disability and sex.

47.     On May 30, 2017, Dr. Schaeffer responded via email acknowledging that Akbar Khan was similarly situated to Dr. Carbone in all respects, but he had been allowed to apply for the vacant position, and submitted "new references – aside from the standard application materials which [SUNY Downstate] already had – and he was hired to fill a position." Dr. Schaeffer added "[a]t this time, there are no vacant positions in the program." *See*, email at Exhibit 5.

48.     Without a response from Dr. Riley, on June 12, 2017, Dr. Carbone, through counsel wrote a second pre-litigation demand letter to Dr. Riley.

---

[2] Following intervention by the undersigned counsel, Dr. Carbone's residency was extended to July 25, 2017 based on her unpaid leave in December 2016, as previously agreed.

49.    In response to counsel's letter, on June 19, 2017, Kevin P. O'Mara, Esq., Senior Managing Counsel for SUNY Downstate wrote "the decision to non-renew Dr. Carbone has not changed as a result [of Dr. Carbone's counsel's letter], and "[t]here is no available residency slot for Dr. Carbone to continue in the SUNY Downstate residency program for the reasons previously communicated to her."

50.    On June 20, 2017, counsel for Dr. Carbone responded by requesting confirmation of her extension of residency until July 2017 per her then current contract.

51.    On June 22, 2017, Mr. O'Mara responded that "I am told Dr. Carbone did not seek to appeal the non-renewal notification from November 2016," and acknowledged that Dr. Carbone would be scheduled on an elective specialty rotation for July 2017.

52.    Although subsequent communications through counsel occurred, SUNY Downstate's position remained unchanged.

53.    On July 25, 2017, SUNY Downstate terminated Dr. Carbone's participation in the SUNY Downstate residency program.

54.    Dr. Carbone provided Defendants with an account of the cognitive impairment and her need for a reasonable accommodation in the work environment. As an employer, SUNY Downstate failed to engage in an interactive dialogue once Dr. Carbone identified her disability and requested a reasonable accommodation.  SUNY Downstate was also required to comply with ACGME due process and accreditation requirements concerning her contract non-renewal. Instead, Defendants acted in violation of ACGME requirements, terminated Dr. Carbone's employment based on her disability under the guise of a non-renewal of a contract, and refused to engage in a good-faith inquiry as to any reasonable accommodation as is required by law. They simply rejected Dr. Carbone's disability as irrelevant, ignored SUNY Downstate's own GME due

process policy as applied to Dr. Carbone, supported and allowed a hostile environment to exist and perpetuate at SUNY Downstate based on her disability, retaliated against her for complaints of disability discrimination, and ultimately terminated her residency despite her being eligible to continue in the program, because Defendants did not want a resident with a cognitive disability to remain in its program.

55.     Additionally, this is not the first instance in recent history that SUNY Downstate and its physicians/executives have engaged in a pattern of disability discrimination by precluding a resident from completing her residency based on her disability.  *See*, Complaint and Settlement Agreement in the matter of Svetlana Kleyman, M.D. v. SUNY Downstate Medical Center, Lisa Dresner, M.D., Stephen Wadowski, M.D., and John F. Williams, M.D., Case No. 16-CV-2288(AMD)(VMS) annexed as Exhibits "6" and "7" respectively.

56.     Further, similarly-situated male colleagues who had passed their Step 3 examination before the end of the academic year (like Dr. Carbone), including but not limited to Akbar Khan, M.D., were permitted to remain in the residency program and/or reapply for vacant PGY3-Year positions while she was not.

57.     Upon information and belief, post–termination of her participation in the residency program, SUNY Downstate permitted similarly-situated colleagues (without a cognitive disability) including but not limited to Kalyani Arnipali, to re-enter and/or remain in the SUNY Downstate residency program, despite SUNY Downstate's position that there were no vacant residency slots.

## FIRST CAUSE OF ACTION
## FOR DISABILITY DISCRIMINATION UNDER
## THE REHABILITATION ACT OF 1973

### (Not Against Individual Defendants)

58.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "57" hereof as if fully set forth at length herein.

59.     The acts committed by Defendant, SUNY Downstate, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her cognitive disability in violation of the Rehabilitation Act of 1973 (29 U.S.C. §701 *et seq.*).

60.     At all relevant times herein, Dr. Carbone has a disability and/or was regarded as having a disability by Defendant SUNY Downstate and therefore is a member of a protected class.

61.     At all relevant times herein, SUNY Downstate was a program or activity as defined by Section 504 of the Rehabilitation Act of 1973 that received federal financial assistance.

62.     The acts of which Dr. Carbone complains of constitute disability discrimination, took place as a result of Dr. Carbone's cognitive and/or perceived cognitive disability, and all took place while Dr. Carbone was a SUNY Downstate Medical Center employee and in the course of her employment at SUNY Downstate.

63.     The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were committed by SUNY Downstate personnel, including but not limited to Drs. Schaeffer, Wadowski, Riley, and Wlody, who possessed and maintained supervisory authority over Dr. Carbone, and for whose acts, SUNY Downstate is liable.

64.     The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of her employment, including without limitation exclusion from participation in and

denial of benefits under the SUNY Downstate residency program, and her ultimate discharge from SUNY Downstate.

65.    As a direct and proximate result of SUNY Downstate's conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of SUNY Downstate's conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

66.    SUNY Downstate's discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of SUNY Downstate's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

67.    As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under the Rehabilitation Act of 1973, SUNY Downstate is liable to Dr. Carbone for actual damages for loss of wages and benefits and compensatory damages in an amount to be determined at trial.

68.    As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under the Rehabilitation Act of 1973, SUNY Downstate is further liable to Dr. Carbone for attorney's fees, and other equitable and/or declaratory relief.

69.    Dr. Carbone therefore seeks judgment against SUNY Downstate on this First Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and declaratory and/or equitable relief, including Dr. Carbone's return to her PGY-3 in the SUNY Downstate

pediatric residency program.

## SECOND CAUSE OF ACTION
## FOR SEX DISCRIMINATION UNDER TITLE IX OF THE EDUCATION
## AMENDMENTS OF 1972

### (Not Against Individual Defendants)

70.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "69" hereof as if fully set forth at length herein.

71.     The acts committed by Defendant, SUNY Downstate, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her sex in violation of Title IX of the Education Amendments of 1972 (Title IX) (20 U.S.C. §1681 *et seq.*)

72.     Dr. Carbone, a woman, is a member of a protected class.

73.     At all relevant times herein, SUNY Downstate was an education program or activity within the scope of Title IX that received federal financial assistance.

74.     The acts of which Dr. Carbone complains of constitute sex discrimination, took place as a result of Carbone's sex, and all took place while Carbone was a SUNY Downstate resident at SUNY Downstate.

75.     The acts and conduct complained of herein supporting Dr. Carbone's claims for sex discrimination were committed by SUNY Downstate personnel, including but not limited to Drs. Schaeffer, Wadowski, Riley and Wlody, who possessed and maintained supervisory authority over Carbone, and for whose acts, SUNY Downstate is liable.

76.     The acts and conduct complained of herein supporting Dr. Carbone's claims for sex discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of her residency, including without limitation exclusion from participation in and denial of benefits

under the SUNY Downstate residency program, denial of due process rights under the GME Grievance Procedures and Due Process Policy, and her ultimate discharge from SUNY Downstate, while allowing a similarly-situated male colleague to remain in the residency program.

77.    As a direct and proximate result of SUNY Downstate's conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of SUNY Downstate's conduct upon her future employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

78.    SUNY Downstate's discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of SUNY Downstate's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

79.    As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under Title IX, SUNY Downstate is liable to Dr. Carbone for actual damages for loss of wages and benefits and compensatory damages in an amount to be determined at trial.

80.    As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under Title IX, SUNY Downstate is further liable to Dr. Carbone for attorney's fees, and other equitable and/or declaratory relief.

81.    Dr. Carbone therefore seeks judgment against SUNY Downstate on this Second Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and declaratory and/or equitable relief, including Dr. Carbone's return to her PGY-3 in the SUNY Downstate

pediatric residency program.

## THIRD CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

### (Not Against Individual Defendants)

82.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "81" hereof as if fully set forth at length herein.

83.     SUNY Downstate's acts, which are all deemed a part of this cause of action, constitute unlawful and retaliatory conduct against Dr. Carbone in violation of her rights under the Title IX.

84.     The acts of which Dr. Carbone complains of herein supporting her claims for retaliation took place as a result of and in retaliation for engaging in protected activity, including but not limited to opposing and complaining to supervisory personnel at SUNY Downstate about sex discrimination towards her regarding continuation in the SUNY Downstate residency program, ultimately leading to her discharge.

85.     As a direct and proximate result of SUNY Downstate's retaliatory conduct, Dr. Carbone suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of SUNY Downstate's conduct upon Dr. Carbone's future employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

86.     SUNY Downstate's conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of SUNY Downstate's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional

injuries.

87.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under Title IX, SUNY Downstate is liable to Dr. Carbone for lost wages and benefits, and compensatory damages in an amount to be determined at trial.

88.     As a direct and proximate result of SUNY Downstate's violation of Dr. Carbone's rights under Title IX, SUNY Downstate is further liable to Dr. Carbone for attorney's fees and other equitable relief.

89.     Dr. Carbone therefore seeks judgment against SUNY Downstate on the Third Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs, disbursements, and attorney's fees, and declaratory and/or equitable relief, including Dr. Carbone's return to her PGY-3 in the SUNY Downstate pediatric residency program.

## FOURTH CAUSE OF ACTION
## FOR DISABLITY DISCRIMINATION UNDER THE
## NEW YORK EXECUTIVE LAW

### (Against Individual Defendants)

90.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "89" hereof as if fully set forth at length herein.

91.     The acts committed by the Individual Defendants, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her cognitive disability in violation of NYSHRL §296(1)(a) and §296(6).

92.      At all relevant times herein, Dr. Carbone had a disability and/or was regarded as having a disability by the Individual Defendants and therefore is a member of a protected class.

93.     The acts of which Dr. Carbone complains of herein supporting her claims for

disability discrimination took place as a result of her membership in a protected class and all took place while she was a SUNY Downstate employee of and in the course of her SUNY Downstate employment.

94.     The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were committed by the Individual Defendants, who possessed and maintained direct supervisory authority over Dr. Carbone, and had the power to make, and made, personnel decisions affecting Dr. Carbone.

95.     The Individual Defendants personally participated, aided, abetted, incited, compelled, and/or coerced the discriminatory acts and conduct committed against Dr. Carbone as a SUNY Downstate employee.

96.     The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of Dr. Carbone's employment, including without limitation her ultimate discharge from SUNY Downstate.

97.     As a direct and proximate result of the Individual Defendants' conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of  the Individual Defendants' conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

98.     The Individual Defendants' discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of the Individual Defendants' violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other

things, mental and emotional injuries.

99.     As a direct and proximate result of the Individual Defendants' violation of Carbone's rights under the NYSHRL, the Individual Defendants are liable to Dr. Carbone for lost income and benefits, and compensatory damages pursuant to NYSHRL §297(4)(c)(iii), in an amount to be determined at trial.

100.    Dr. Carbone therefore seeks judgment against the Individual Defendants on the Fourth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements.

101.    Dr. Carbone also seeks the imposition of the maximum civil fines and penalties against the Individual Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for their willful, wanton, and malicious conduct.

### FIFTH CAUSE OF ACTION
### FOR SEX DISCRIMINATION UNDER THE
### NEW YORK EXECUTIVE LAW

### (Against Individual Defendants)

102.    Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "101" hereof as if fully set forth at length herein.

103.    The acts committed by the Individual Defendants, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her sex in violation of NYSHRL §296(1)(a) and §296(6).

104.     Dr. Carbone, a woman, is a member of a protected class.

105.    The acts of which Dr. Carbone complains of herein supporting her claims for sex discrimination took place as a result of her membership in a protected class and all took place while she was a SUNY Downstate employee of and in the course of her SUNY Downstate

employment.

106.    The acts and conduct complained of herein supporting Dr. Carbone's claims for sex discrimination were committed by the Individual Defendants, who possessed and maintained direct supervisory authority over Dr. Carbone, and had the power to make, and made, personnel decisions affecting Dr. Carbone.

107.    The Individual Defendants personally participated, aided, abetted, incited, compelled, and/or coerced the discriminatory acts and conduct committed against Dr. Carbone as a SUNY Downstate employee.

108.    The acts and conduct complained of herein supporting Dr. Carbone's claims for sex discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of Dr. Carbone's employment, including without limitation her ultimate discharge from SUNY Downstate.

109.    As a direct and proximate result of the Individual Defendants' conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of the Individual Defendants' conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

110.    The Individual Defendants' discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of the Individual Defendants' violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

111.    As a direct and proximate result of the Individual Defendants' violation of Dr.

Carbone's rights under the NYSHRL, the Individual Defendants are liable to Dr. Carbone for lost income and benefits, and compensatory damages pursuant to NYSHRL §297(4)(c)(iii) in an amount to be determined at trial.

112.     Dr. Carbone therefore seeks judgment against the Individual Defendants on the Fifth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements.

113.     Dr. Carbone also seeks the imposition of the maximum civil fines and penalties against the Individual Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for their willful, wanton, and malicious conduct.

## SIXTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE
## NEW YORK EXECUTIVE LAW

### (Against Individual Defendants)

114.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "113" hereof as if fully set forth herein.

115.     The acts committed by the Individual Defendants, which are all deemed a part of this cause of action, constitute unlawful  retaliatory conduct against Dr. Carbone in violation of NYSHRL §296(6) and §296(7).

116.     The acts of which Dr. Carbone complains of herein, support her claims for retaliation and took place as a result of and in retaliation for, including but not limited to, Dr. Carbone's opposing the Individual Defendants' discriminatory conduct toward her.

117.     At all relevant times hereto, the Individual Defendants had the power to make, and made, personnel decisions affecting Dr. Carbone.

118.     The Individual Defendants personally participated, aided, abetted, incited,

compelled and/or coerced the retaliatory acts and conduct committed against Dr. Carbone as a SUNY Downstate employee.

119.     As a direct and proximate result of the Individual Defendants' retaliatory conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of income benefits as well as other losses associated with the effects of the Individual Defendants' conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

120.     The Individual Defendants' retaliatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of the Individual Defendants' violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

121.     As a direct and proximate result of the Individual Defendants' violation of Dr. Carbone's rights under the NYSHRL, the Individual Defendants are liable to Dr. Carbone for lost income and benefits, and compensatory damages pursuant to NYSHRL §297(4)(c)(iii) in an amount to be determined at trial.

122.     Dr. Carbone therefore seeks judgment against the Individual Defendants on the Sixth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements.

123.     Dr. Carbone also seeks the imposition of the maximum civil fines and penalties against the Individual Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for their willful, wanton, and malicious conduct.

**SEVENTH CAUSE OF ACTION**
**FOR DISABILITY DISCRIMINATION UNDER THE**
**NEW YORK CITY ADMINISTRATIVE CODE**

**(Against Individual Defendants)**

124.    Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "123" hereof as if fully set forth herein.

125.    The acts committed by the Individual Defendants, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her cognitive disability in violation of NYCHRL § 8-107 *et seq.*

126.    At all relevant times herein, Dr. Carbone had a disability and/or was regarded as having a disability by the Individual Defendants and therefore is a member of a protected class.

127.    The acts of which Dr. Carbone complains of constitute disability discrimination, took place as a result of Dr. Carbone's membership in a protected class, and all took place while she was a SUNY Downstate employee and in the course of her employment at SUNY Downstate.

128.    The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were committed by SUNY Downstate personnel, including but not limited to the Individual Defendants, who possessed and maintained supervisory authority over Dr. Carbone, and for whose acts, SUNY Downstate is liable.

129.    The acts and conduct complained of herein supporting Dr. Carbone's claims for disability discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of her employment, including without limitation her ultimate discharge from SUNY Downstate.

130.    As a direct and proximate result of the Individual Defendants' conduct, Dr. Carbone has suffered and will continue to suffer from, among other things, a significant loss of

income, benefits, as well as other losses associated with the effects of the Individual Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

131.    The Individual Defendants' discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of the Individual Defendants' violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

132.    Further, the Individual Defendants' discriminatory practices were done with malice and/or reckless indifference to Dr. Carbone's protected rights, such that, in addition to all the measures of relief cited herein to which Dr. Carbone is entitled, the Individual Defendants should be required to pay punitive damages pursuant to NYCHRL §8-502(a) as punishment for their vile, indecent, and reprehensible conduct, in order to deter the Individual Defendants and others similarly-situated from such conduct in the future.

133.    As a direct and proximate result of the Individual Defendants' violation of Dr. Carbone's rights under the NYCHRL, the Individual Defendants are liable to Dr. Carbone for actual damages for loss of wages and benefits, and compensatory and punitive damages in an amount to be determined at trial.

134.    As a direct and proximate result of  the Individual Defendants' violation of Dr. Carbone's rights under the NYCHRL, the Individual Defendants are further liable to Dr. Carbone for attorney's fees pursuant to NYCHRL §8-502(g).

135.    Dr. Carbone therefore seeks judgment against the Individual Defendants on the Seventh Cause of Action for actual damages for loss of wages and benefits, compensatory damages

and punitive damages in amount to be determined at trial, plus costs, disbursements, and attorney's fees.

## EIGHTH CAUSE OF ACTION
## FOR GENDER DISCRIMINATION UNDER THE
## NEW YORK CITY ADMINISTRATIVE CODE

### (Against Individual Defendants)

136.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "135" hereof as if fully set forth herein.

137.     The acts committed by the Individual Defendants, which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Dr. Carbone based on her gender in violation of the NYCHRL § 8-107 *et seq*.

138.     Dr. Carbone, a woman, is a member of a protected class.

139.     The acts of which Dr. Carbone complains constitute gender discrimination, took place as a result of Dr. Carbone's membership in a protected class, and all took place while she was a SUNY Downstate employee and in the course of her employment at SUNY Downstate.

140.     The acts and conduct complained of herein supporting Dr. Carbone's claims for gender discrimination were committed by SUNY Downstate personnel, including but not limited to the Individual Defendants, who possessed and maintained supervisory authority over Dr. Carbone, and for whose acts, SUNY Downstate is liable.

141.     The acts and conduct complained of herein supporting Dr. Carbone's claims for gender discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of her employment, including without limitation her ultimate discharge from SUNY Downstate.

142.     As a direct and proximate result of the Individual Defendants' conduct, Dr.

Carbone has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of the Individual Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

143.    The Individual Defendants' discriminatory conduct so degraded Dr. Carbone physically, mentally, and emotionally that, as a proximate result of the Individual Defendants' violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and emotional injuries.

144.    Further, the Individual Defendants' discriminatory practices were done with malice and/or reckless indifference to Dr. Carbone's protected rights, such that, in addition to all the measures of relief cited herein to which Dr. Carbone is entitled, the Individual Defendants should be required to pay punitive damages pursuant to NYCHRL§8-502(a) as punishment for their vile, indecent, and reprehensible conduct, in order to deter the Individual Defendants and others similarly-situated from such conduct in the future.

145.    As a direct and proximate result of the Individual Defendants' violation of Dr. Carbone's rights under the NYCHRL, the Individual Defendants are liable to Dr. Carbone for actual damages for loss of wages and benefits, and compensatory and punitive damages in an amount to be determined at trial.

146.    As a direct and proximate result of the Individual Defendants' violation of Dr. Carbone's rights under the NYCHRL, the Individual Defendants are further liable to Carbone for attorney's fees pursuant to NYCHRL §8-502(g).

147.    Dr. Carbone therefore seeks judgment against the Individual Defendants on this

Eighth Cause of Action for actual damages for loss of wages and benefits, compensatory damages and punitive damages in amount to be determined at trial, plus costs, disbursements, and attorney's fees.

### NINTH CAUSE OF ACTION
### FOR RETALIATION UNDER THE
### NEW YORK CITY ADMINISTRATIVE CODE

#### (Against Individual Defendants)

148.     Dr. Carbone repeats and realleges the allegations contained in paragraphs "1" through "147" hereof as if fully set forth herein.

149.     The acts committed by the Individual Defendants, which are all deemed a part of this cause of action, constitute unlawful and retaliatory conduct against Dr. Carbone in violation of her rights under the NYCHRL §8-107(7).

150.     The acts of which Dr. Carbone complains of herein supporting her claim for retaliation took place as a result of and in retaliation for, including but not limited to, Dr. Carbone opposing the Individual Defendants' discriminatory conduct towards her.

151.     As a direct and proximate result of the Individual Defendants' retaliatory conduct, Dr. Carbone suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of the Individual Defendants' conduct upon Dr. Carbone's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

152.     The Individual Defendants' conduct so degraded Carbone physically, mentally, and emotionally that, as a proximate result of the Individual Defendant's violation of her civil rights, Dr. Carbone has suffered, and will continue to suffer, among other things, mental and

emotional injuries.

153. Further, the acts committed by the Individual Defendants were done with malice and/or reckless indifference to Dr. Carbone's protected rights, such that, in addition to all the measures of relief complained of herein to which Dr. Carbone is entitled, the Individual Defendants should be required to pay punitive damages pursuant to NYCHRL §8-502(a) as punishment for their vile, indecent, and reprehensible conduct, in order to deter the Individual Defendants and others similarly situated from such conduct in the future.

154. As a direct and proximate result of the Individual Defendants' violation of Dr. Carbone's rights under the NYCHRL, the Individual Defendants are liable to Dr. Carbone for lost wages and benefits, and compensatory and punitive damages an amount to be determined at trial

155. As a direct and proximate result of the Individual Defendants' violation of Dr. Carbone's rights under the NYCHRL, the Individual Defendants are further liable to Carbone for attorney's fees pursuant to NYCHRL §8-502(g).

156. Dr. Carbone therefore seeks judgment against the Individual Defendants on the Ninth Cause of Action for actual damages for loss of wages and benefits, compensatory and punitive damages in an amount to be determined at trial, plus costs, disbursements, and attorney's fees.

**WHEREFORE**, Dr. Carbone demands judgment against Defendants, individually, jointly, and severally as follows: (i) on the First Cause of Action for actual damages, including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and other equitable and/or declaratory relief; (ii) on the Second Cause of Action for actual damages, including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs, disbursements, attorney's fees, and other

equitable and/or declaratory relief; (iii) on the Third Cause of Action for actual damages, including loss of wages and benefits, compensatory damages, plus costs, disbursements, and other equitable and/or declaratory relief; (iv) on the Fourth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages, plus costs and disbursements; (v) on the Fifth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages, plus costs and disbursements; (vi) on the Sixth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements; (vii) on the Seventh Cause of Action for actual damages, including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements (viii) on the Eighth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages and punitive damages in an amount to be determined at trial, plus costs, disbursements, and attorney's fees; (ix) on the Ninth Cause of Action for actual damages, including loss of wages and benefits, compensatory damages and punitive damages in an amount to be determined at trial, plus costs, disbursements, and attorney's fees; and (x) for such other and further relief as this Court deems just and proper.

Dated:    Mount Kisco, New York
          January 31, 2018

                              MARKUS & SHERIDAN, LLP

                              By:
                                  _____
                                  Marc O. Sheridan
                                  *Attorneys for Plaintiff*
                                  116 Radio Circle, Suite 304
                                  Mount Kisco, New York 10549
                                  (914) 241-6300